UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KELVIN JACKSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WESTERN FLYER EXPRESS, LLC,<br><br>Defendant. | Civil Action No. CIV-22-68-J<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT AND JURY DEMAND

**I.     INTRODUCTION**

1. This is a class action lawsuit brought on behalf of individuals who have signed agreements to be contractor drivers for Defendant Western Flyer Express, LLC ("Western Flyer").

2. Plaintiff Kelvin Jackson alleges, on behalf of himself and others similarly situated, that Western Flyer has violated 49 U.S.C. § 14102 and its regulations, referred to hereinafter as the Truth-in-Leasing regulations.

3. Plaintiff seeks damages, injunctive relief, and attorneys' fees and costs, and all other allowable relief.

## PARTIES

4. Plaintiff Kelvin Jackson is an adult resident of Flagler County, Florida. He was a contractor driver for Western Flyer from approximately July 2021 to November 2021.

5. Plaintiff Jackson brings this action on behalf of a putative class of similarly situated individuals, namely: "all persons who executed contracts to become contractor drivers with Western Flyer since January 24, 2018."

6. Defendant Western Flyer Express, LLC is an Oklahoma company with corporate offices in Oklahoma City, Oklahoma and Midlothian, Texas.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331.

8. The Court has personal jurisdiction over Defendant Western Flyer because Defendant is an Oklahoma corporation with corporate offices in Oklahoma, and Defendant does business in the State of Oklahoma.

9. The Court has personal jurisdiction over Plaintiff Jackson and the putative class because they have worked in Oklahoma for an Oklahoma company.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to the claims set forth in this complaint occurred in this judicial district.

## FACTS

11. Defendant Western Flyer is a trucking company.

12. Western Flyer is licensed with the U.S. Department of Transportation. It employs drivers to transport its customers' freight in interstate commerce. Defendant Western Flyer is a motor carrier and an authorized carrier under 49 U.S.C. §§ 13901 and 13902, *et seq.*

13. Western Flyer has both company (employee) drivers and contractor drivers, who lease the trucks they drive through Western Flyer.

14. Plaintiff Kelvin Jackson was a contractor driver for Western Flyer.

15. In order to become contractor drivers for Western Flyer, individuals must attend an orientation and sign several contracts.

16. Plaintiff Jackson attended orientation at Western Flyer's facility in Oklahoma City, Oklahoma in July 2021.

17. During orientation, Plaintiff Jackson was required to sign a Contracted Operator Agreement, a copy of which is attached as Exhibit 1.

18. The Contracted Operator Agreement is a standard-form agreement that was presented to Plaintiff Jackson and other contractor drivers on a take-it-or-leave it basis and which all contractor drivers are required to sign.

19. Plaintiff Jackson was also required to sign a Commercial Motor Vehicle Lease Agreement with RWTL Capacity Solutions, a copy of which is attached as Exhibit 2.

20. The Commercial Motor Vehicle Lease Agreement is a standard-form agreement that was presented to Plaintiff Jackson and other contractor drivers on a take-it-or-leave it basis and which all contractor drivers are required to sign.

21. Western Flyer requires contractor drivers who want to lease trucks to do so through RWTL Capacity Solutions.

22. As Western Flyer states on its website, it "is proud to work alongside RWTL Capacity Solutions," which "has great equipment and preferred terms for contractors who wish to lease their vehicle and/or provide driver services to Western Flyer." Western Flyer Express: Lease Website, attached as Exhibit 3.

23. RWTL Capacity Solutions is also an Oklahoma company and it is located at the same corporate address as Western Flyer.

24. On information and belief, Western Flyer and RWTL Capacity Solutions share owners, officers, agents, and/or employees.

25. According to RWTL Capacity Solutions' website, "RWTLCA is not an authorized Motor Carrier and does not utilize driver services. Preferred terms for driver services/contractors are offered by Western Flyer." Western Flyer Express: Company Overview website, attached as Exhibit 4.

26. Contractor drivers are required to sign several other documents at orientation, including a Mobile Communications Hardware and Usage Agreement, all of which are standard-form agreements presented to contractor drivers on a take-it-or-leave it basis.

27. A copy of the Mobile Communications Hardware and Usage Agreement signed by Plaintiff Jackson is attached as Exhibit 5.

28. On information and belief, Western Flyer requires all contractor drivers to enter into these same or similar agreements under the same or similar circumstances.

29. Under Western Flyer's Maintenance and Mechanical Breakdown Program, an amount of money (ranging from 7 cents to 12 cents) per mile is deducted from contractor drivers' earnings.

30. The Maintenance and Mechanical Breakdown Program is described in the Commercial Motor Vehicle Lease Agreement, Exhibit 2, at 13-14.

31. The amounts deducted from contractor drivers' earnings pursuant to the Maintenance and Mechanical Breakdown Program constitute an escrow fund under 49 C.F.R. § 376.2(l).

32. However, Western Flyer does not comply with the requirements in the Truth-in-Leasing regulations with respect to escrow funds.

33. *Inter alia*, Western Flyer does not return amounts deducted pursuant to the Maintenance and Mechanical Breakdown Program to contractor drivers after termination and those amounts do not accrue interest.

34. When Plaintiff Jackson's relationship with Western Flyer terminated in November 2021, Western Flyer had withheld thousands of dollars from his earnings pursuant to the Maintenance and Mechanical Breakdown Program, but Western Flyer did not return that money to Plaintiff Jackson and instead retained the money itself.

35. Western Flyer's Contracted Operator Agreement provides that drivers whose relationship with Western Flyer is terminated within three months will have a $500 "onboarding reimbursement" deducted from their earnings. Exhibit 1, ¶ 7.3.3.

36. Western Flyer's $500 "onboarding reimbursement" constitutes an unlawful early termination penalty.

37. Western Flyer requires contractor drivers to use its mobile communications equipment and deducts a usage fee of $12.50 per week and a rental fee of $12.50 per week from contractor drivers' earnings for the mobile communications equipment.

38. Western Flyer's Contracted Operator Agreement provides that drivers "shall bear the cost" for equipment provided by Western Flyer. Exhibit 1, ¶ 3.4.4.

39. For example, Western Flyer deducted $25 from Plaintiff Jackson's earnings for a mobile communications device (listed as "QUALCOMM EQUIP/MESSAGING" on his earnings statements).

40. On information and belief, the $25 per week charged to drivers for mobile communications devices exceeds the cost to Western Flyer for this equipment.

41. The amounts charged to contractor drivers for mobile communications devices constitute required purchases in violation of 49 C.F.R. § 376.12(i).

42. Western Flyer also charges drivers more than its costs for other equipment and fails to disclose or adequately describe these chargebacks.

43. For example, Western Flyer charged Plaintiff Jackson $78.59 for "ENFORCER LOCKS," which, on information and belief, exceeded the cost to Western Flyer for that equipment and which was not disclosed in his contracts.

44. Appendix A to Western Flyer's Contracted Operator Agreement states that Western Flyer will make deductions from drivers' earnings for "[i]nsurance costs." Exhibit 1, Appendix A, ¶ 3(a)(xi).

45. Appendix B to Western Flyer's Contracted Operator Agreement states that, if a contractor driver elects insurance through Western Flyer, "CARRIER shall deduct from CO's Settlement, any premiums, costs or expenses, and other such amounts reflecting CARRIER's expense in obtaining and administering such requested coverage or program." Exhibit 1, Appendix B, ¶ 3.4.

46. Western Flyer made weekly deductions from Plaintiff Jackson's earnings for insurance, typically $29.54 per week for occupational accident insurance and $7.50 per week for bobtail insurance.

47. On information and belief, the amounts charged to drivers for insurance exceeds the cost to Western Flyer for this coverage.

48. Appendix A to Western Flyer's Contracted Operator Agreement states that it may deduct from drivers' earnings "[a]ll pre-employment expenses related to the engagement of CO incurred by CARRIER prior to signing the COA, including, but not limited to, drug and alcohol testing, and physical examinations." Exhibit 1, Appendix A, ¶ 3(a)(i).

49. This provision does not sufficiently specify amounts to be charged and/or the methods of calculating those amounts.

50. On information and belief, Western Flyer charges contractor drivers more than its costs for "[p]re-employment expenses."

51. Western Flyer's Contracted Operator Agreement provides that contractor drivers' compensation is subject to change.

52. Specifically, Appendix A to the Contracted Operator Agreement states that Western Flyer "reserves the right to revise any of the provisions of this Appendix A, including the compensation, expense or reimbursement structure, amounts, or formulas as market conditions change. . ." Exhibit 1, Appendix A at 25.

53. Western Flyer has also deducted from contractor drivers' earnings more for fuel than Western Flyer pays.

54. Western Flyer provides contractor drivers with fuel cards and instructs them only to get fuel at gas stations owned by a particular company.

55. Western Flyer then deducts from contractor drivers' earnings the amounts charged at the pump for that fuel.

56. However, on information and belief, Western Flyer does not pay to the fuel company the full price charged at the pump.

57. Western Flyer retains from contractor drivers' earnings the amounts for fuel in excess of what Western Flyer actually pays to the fuel company.

58. Western Flyer does not adequately disclose this, nor does it properly explain the amounts to be charged to contractor drivers for fuel purchases.

59. Western Flyer's agreements with contractor drivers do not satisfy the requirements of the Truth-in-Leasing regulations.

60. Additionally, Western Flyer has not adhered to the terms of its contracts with its contractor drivers.

61. Western Flyer's retention of portions of drivers' earnings as set forth above constitutes an improper windfall for Western Flyer.

62. Contractor drivers have suffered harm and have sustained damages from Western Flyer's actions, including (*inter alia*) improper deductions from their earnings and overcharging for equipment and insurance.

## CLASS ALLEGATIONS

63. Plaintiff Jackson brings this lawsuit against Defendant Western Flyer as a class action pursuant to Fed. R. Civ. P. 23 for and on behalf of the following class for which Plaintiff seeks certification:

> All persons who executed contracts to become contractor drivers with Western Flyer since January 24, 2018.

64. This case may be maintained properly as a class action under Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2) and/or 23(b)(3).

65. The class is so numerous that joinder of all potential class members is impracticable. On information and belief, the class is comprised of hundreds of drivers or more. Plaintiff does not know the exact size of the class since that information is within the control of Defendant.

66. There are questions of law or fact common to the class that predominate over any individual issues that might exist. Common questions of law and fact include: the terms of contracts between Western Flyer and contractor drivers; the amounts and nature of deductions made from contractor drivers' earnings; and costs to Western Flyer for insurance, equipment, and fuel.

67. The class claims asserted by Plaintiff are typical of the claims of potential class members. Defendant operates in a highly regulated industry that requires it to maintain standard operating procedures and uniform policies, procedures, and

practices and adhere to laws and regulations governing motor carriers. Plaintiffs Jackson's and all class members' claims for damages can readily be calculated from Defendant's business records.

68. Plaintiff Jackson will fairly and adequately protect and represent the interests of the class. His interest in challenging the unlawful practices of Defendant motivates him to bring this case as a class action. Plaintiff Jackson retained the undersigned counsel, who are experienced in class actions generally and on behalf of individuals working in the trucking industry.

69. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The alternative – numerous identical lawsuits alleging similar or identical causes of action – would not serve the interests of judicial economy and the prosecution of separate actions by the individual potential class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendant. Moreover, some class members – particularly current drivers – may be reluctant to bring their claims individually for fear of retaliation by Defendant.

70. Public policy supports the broad remedial purposes of class actions in general and specifically to vindicate the rights afforded by the Truth-in-Leasing regulations to drivers, whose individual claims may be too small to warrant the expense of litigation.

71. This class action will not be difficult to manage due to the uniformity of claims among the class members and the amenability of wage and hour cases to both

class litigation and the use of representative testimony and representative documentary evidence.

72. The contours of the class will be easily defined by reference to business records kept by Defendant.

73. Defendant has acted on grounds generally applicable to the class.

**CLAIMS FOR RELIEF**

**COUNT I:**
**TRUTH-IN-LEASING CLAIMS**

74. Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

75. Defendant Western Flyer is a motor carrier licensed with the U.S. Department of Transportation.

76. Defendant Western Flyer has violated the Truth-in-Leasing regulations as set forth above, including failure to return or accrue interest on escrow funds, imposition of an early termination fee, charging of improper and/or excessive amounts for insurance, equipment, and fuel, etc., as set forth in more detail above.

77. The terms of Western Flyer's contracts with contractor drivers did not adhere to the Truth-in-Leasing regulations, and Western Flyer did not adhere with the terms of its contracts.

78. Pursuant to 49 U.S.C. § 14704(a), Defendant Western Flyer is liable to Plaintiff Jackson and the other drivers for the damages that they suffered on account of Western Flyer's violations of the Truth-in-Leasing regulations and is also liable for injunctive relief to remedy those violations.

## JURY DEMAND

Plaintiff hereby demands a jury on all claims so triable.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

a. Certification of this action as a class action under Rule 23(b)(1), 23(b)(2) and 23(b)(3);

b. Appointing Plaintiff Kelvin Jackson as class representative and his counsel as class counsel;

c. A judgment against Defendant Western Flyer for all damages that contractor drivers sustained as a result of its violations of the Truth-in-Leasing regulations, including but not limited to restitution for all improper deductions and chargebacks made, all amounts owed in interest on escrowed funds, all escrow funds improperly withheld at the termination of the relationship, all amounts improperly retained by Defendant in excess of costs or expenses, and all other damages;

d. Injunctive relief requiring Defendant to comply fully with the Truth-in-Leasing regulations in its contracts, payment of compensation, and deductions and chargebacks from contractor drivers' earnings;

e. Pre- and post-judgment interest;

f. Attorneys' fees and costs, pursuant to 49 U.S.C. § 14704(e); and

g. Any other relief as this Court deems just and proper.

Respectfully submitted,

KELVIN JACKSON, individually and on behalf all others similarly situated,

By their attorneys,

 */s/ Brendan J. Donelon*
Brendan J. Donelon, MO #43901
DONELON, P.C.
4600 Madison, Ste. 810
Kansas City, Missouri 64112
816-221-7100
Fax: 816-709-1044
brendan@donelonpc.con

Hillary Schwab, Esq.
   *Pro hac vice* application forthcoming
Rachel Smit, Esq.
   *Pro hac vice* application forthcoming
Brant Casavant, Esq.
   *Pro hac vice* application forthcoming
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel:  (617) 607-3260
Fax:  (617) 488-2261
hillary@fairworklaw.com
rachel@fairworklaw.com
brant@fairworklaw.com

Dated: January 24, 2022