## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

_____
|                              )
KELVIN JACKSON, individually    )
and on behalf of all others     )
similarly situated,             )
                                )
        Plaintiffs,    )    Civil Action No. 5:22-cv-00068-J
                                )
v.                              )
                                )
WESTERN FLYER EXPRESS, LLC,     )
                                )
        Defendant.     )
_____|

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF

Plaintiff Kelvin Jackson, on behalf of himself and all others similarly situated, hereby moves this Court for an order:

1. Granting preliminary approval of the Parties' Joint Stipulation of Settlement ("Settlement Agreement"), a true and correct copy of which is attached to this Motion as Exhibit A;

2. For settlement purposes, preliminarily certifying a Fed. R. Civ. P. 23 class on behalf of the Settlement Class;

3. Preliminarily approving Plaintiff Kelvin Jackson as Representative of the Class for purposes of the Settlement;

4. Preliminarily approving Fair Work, P.C. and Jeff A. Taylor, Esq. as Class;

5. Preliminarily approving Optime Administration, LLC as Settlement Administrator and preliminarily approving the costs of the claims administration;

6.      Preliminarily approving Class Counsel's request for attorneys' fees and costs and Plaintiff Jackson's request for a Service Award;

7.      Approving the Class Notice, a true and correct copy of which is attached to the Settlement Agreement as Exhibit 1;

8.      Authorizing the Settlement Administrator to mail the approved Class Notice; and

9.      Approving the proposed schedule and procedure for completing the final approval process as set forth in the Settlement Agreement.

Plaintiffs bring this Motion pursuant to Federal Rules of Civil Procedure 23(e) and long-established precedent requiring Court approval for class action settlements. This Motion is based on the accompanying Memorandum of Law, the Declaration of Hillary Schwab in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement, the attached Exhibits, and all other records, pleadings, and papers on file in this action. Defendant does not oppose this Motion.

# I.    INTRODUCTION.

This class action was brought on behalf of individuals who contracted with Defendant Western Flyer Express, LLC ("WFX") to provide commercial motor vehicle equipment and driving services pursuant to Contracted Operator Agreements with WFX. The Action is based on WFX's alleged violations of the federal Truth-in-Leasing regulations, 49 C.F.R. § 376.1, *et seq*.

After several months of litigation, followed by extensive arm's-length negotiations (including two full-day mediation sessions), the Parties have reached a global settlement of the Action, memorialized in the proposed Joint Stipulation of Settlement ("Settlement Agreement"), attached as Exhibit A. Plaintiffs now seek preliminary approval of the Settlement.

The Parties have resolved the claims of approximately 2,200 contractors, for a total non-reversionary settlement amount of $800,000. With this proposed settlement, the Parties are resolving claims unlikely to have been prosecuted as individual actions. The settlement provides an excellent benefit to the Class and an efficient outcome in the face of risky litigation. The settlement is fair, reasonable, and adequate in all respects, and Plaintiffs respectfully request that the Court grant the requested approval.

# II.    BACKGROUND.

On January 24, 2022, Plaintiff filed a class action complaint against WFX, alleging that WFX had violated the federal Truth-in-Leasing regulations in its contracts and

compensation practices with its contractors . *See* ECF Doc. 1.[1] WFX filed a motion to dismiss the case, asserting that Plaintiff had not alleged in his complaint two conditions precedent to bringing the case, namely that Plaintiff had not asserted that he had complied with WFX's contractual "mandatory mediation provision" and that Plaintiff had not asserted that he had complied with a "notice-and-cure clause" in the agreement. ECF Doc. 22. Plaintiff opposed WFX's motion. ECF Doc. 29. The Court issued an Order on WFX's motion to dismiss on May 3, 2022. ECF Doc. 31. The Court granted WFX's motion in part and denied it in part, specifically ordering the parties to mediation and administratively closing the case "without prejudice to the right of either party to reopen the proceedings for any purpose." *Id*. at 5.

As ordered by the Court, the parties attended a mediation session on August 15, 2023, to discuss the individual claims of Kelvin Jackson, with mutually agreed-upon mediator James Gibbs, Esq. of Dispute Resolution Consultants of Oklahoma City, Oklahoma. At that mediation session, the parties agreed to consider expanding the mediation process to include consideration of the putative class, and agreed to exchange extensive data and documentation from which Class Counsel could assess the potential damages for the class, and scheduled another mediation session with Attorney Gibbs. The second mediation session was held on October 13, 2023. Though the parties did not reach a resolution at the second mediation, they continued to negotiate for several weeks, both through separate calls with the mediator and through direct negotiation. Finally, after

---

[1] Plaintiff and his corporate entity, KC Express, LLC, which contracted with WFX, are members of the class.

lengthy arms-length negotiations, the parties reached a proposed class-wide resolution of this matter.  Schwab Decl. ¶ 18.

After negotiation, the parties executed the Joint Stipulation of Settlement on May 22, 2023.  Schwab Decl. ¶ 19.

## III. KEY TERMS OF SETTLEMENT.

Under the Settlement Agreement, WFX will pay a non-reversionary Gross Settlement Amount of Eight Hundred Thousand Dollars ($800,000.00) to resolve this litigation.  This amount includes all payments to the Class Members; proposed attorneys' fees and costs; proposed service award to Plaintiff Kelvin Jackson; the costs of settlement administration; and any other obligation of WFX under this settlement.  Subject to Court approval, the proposed Net Settlement Amount, the amount distributed to Class Participants, is approximately $418,333.00.  This amount is the Gross Settlement Amount less costs of settlement administration, proposed attorneys' fees and costs, proposed service award, and proposed dispute fund.  Schwab Decl. ¶ 20.

The proposed class to which the Settlement Agreement applies is:  all persons who executed contracts to become contractor drivers with Western Flyer since March 12, 2021, up through February 27, 2023.  *Id*., ¶ 21.

The entire Gross Settlement Amount will be disbursed pursuant to the terms of the Settlement Agreement, and <u>none</u> of it will revert to WFX.  Subject to Court approval, class members will receive notice of the settlement via text, email, and first-class mail.  Class members will be able to submit claim forms via the website for the settlement and/or by email, facsimile, or mail.  All class members who do not opt out of the settlement shall

release claims under the Truth-in-Leasing regulations, 49 C.F.R. § 376.1, *et seq*., that were or could have been brought in this action. *Id*., ¶ 22.

Class members who submit timely and valid claim forms shall receive settlement shares proportional to their weeks driven during the applicable time period, except that class members shall receive minimum payments of at least $20.00. Settlement shares shall be reported on an IRS Form 1099 (Box 3, other income). *Id*., ¶ 23.

The Settlement Agreement provides that Plaintiff will seek a service payment to Named Plaintiff Kelvin Jackson, of $15,000.00 (subject to Court approval) to compensate him for his time and effort in service of the Class, as well as in exchange for a general release. The proposed service award in the amount of $15,000 for Plaintiff Jackson represents less than 2% of the Gross Settlement Amount. The Settlement Agreement further provides that Class Counsel shall seek an attorneys' fee award of $266,667 (1/3 of the Gross Settlement Amount), subject to Court approval, as well as reasonable litigation costs, including the costs of claims administration, of up to $50,000. *Id*., ¶ 24.

Any funds not distributed after resolution of all disputes and expiration of the check cashing period shall be distributed on a *cy pres* basis to St. Christopher Truckers Relief Fund (50%) and Truckers Final Mile (50%). *Id*., ¶ 25.

## IV.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THIS PROPOSED CLASS ACTION SETTLEMENT.

### A.     Legal standard

Courts strongly favor settlement as a method for resolving disputes. *See Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972); *see also Sears v.*

*Atchison, Topeka & Santa Fe Ry.*, Co., 749 F.2d 1451, 1455 (10th Cir. 1984); *Trujillo v. Colo.*, 649 F.2d 823, 826 (10th Cir. 1981) (citing "important public policy concerns that support voluntary settlements"). This is especially true in class actions, such as this case. *See Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001). "[The] presumption in favor of voluntary settlement agreements is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. May 19, 2014); *see also Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980) ("In the class action context in particular, there is an overriding public interest in favor of settlement. . . .").

Fed. R. Civ. P. 23 (e) requires judicial approval for any compromise of claims brought on a class-wide basis. "Preliminary approval of a class settlement requires the Court to assess (1) whether the matter is suitable for certification as a class action under Rule 23 and (2) the overall fairness of the proposed settlement . . . [and] the adequacy of the notice the parties propose to send out." *Gundrum v. Cleveland Integrity Servs.*, 2017 WL 3503328, at *5 (N.D. Okla. Aug. 16, 2017) (internal quotation marks and citation omitted). The "objective of the court's inquiry at the preliminary approval stage is to determine whether to direct notice of the proposed settlement to class members, permit the opportunity for objections, and schedule a fairness hearing." *Id.* (citing *Tripp v. Rabin*, 2016 WL 3615572, at *2 (D. Kan. July 6, 2016)). "Because preliminary approval is just the first step, courts apply a 'less stringent' standard than that at final approval." *Tripp*, 2016 WL 3615572, at *2.

The standard for approval of a settlement is that the settlement is fair, adequate and reasonable to the class. *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 128 (D. Colo. 2016). A trial court may certify a class when it determines the proposed class satisfies the prerequisites of Federal Rule of Civil Procedure 23 (a), and one of the requirements of Rule 23(b). *See Shook v. El Paso Cnty.*, 386 F.3d 963, 971 (10th Cir. 2004); *Tabor v. Hilti, Inc.*, 703 F.3d 1206 (10th Cir. 2013); *Gundrum*, 2017 WL 3503328, at *6 (citing *Pliego*, 313 F.R.D. at 128).

Plaintiffs now asks this Court to take the first step in the review process, and preliminarily approve the Class for settlement purposes. Given the potential and continued risks if the Parties were to proceed and the uncertainty of the outcome in this matter, the settlement represents a favorable resolution of this Action and eliminates the risk that the Class might otherwise recover nothing.

**B. The Court should conditionally certify the class for settlement.**

The trial court may certify a class when it determines the proposed class satisfies the prerequisites of Federal Rule of Civil Procedure 23(a), and one of the requirements of Rule 23(b). *See Shook v. El Paso Cnty.*, 386 F.3d 963, 971 (10th Cir. 2004); *Tabor v. Hilti, Inc.*, 703 F.3d 1206 (10th Cir. 2013). In performing its analysis under Rule 23, the Court "must accept the substantive allegations of the complaint as true[.]" *Midland Pizza, LLC v. Sw. Bell Tel. Co.*, 277 F.R.D. 637, 639 (D. Kan. 2011) (quoting *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir.2010)). Here, the putative class readily meets the requirements for Rule 23 class certification.

The requirements under Rule 23(a) for class certification are: (1) "the class is so numerous that joinder of all members is impracticable"; (2) "there are questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

First, there is numerosity. There are approximately 2,200 class members, Schwab Decl. ¶ 21, which is well above the threshold that courts hold typically satisfies numerosity. *See, e.g., Francis v. APEX USA, Inc.*, 406 F. Supp. 3d 1206, 1213 (W.D. Okla. 2019) (complaint allegation of 50 to 100 individuals sufficed to plead numerosity). Moreover, as the Tenth Circuit has held, "district courts are granted 'wide latitude' in making the numerosity determination." *Id*. (quoting *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014)). Here, where the class is confirmed to include over two thousand individuals, this element is unquestionably satisfied.

Second, there are numerous questions of law and fact common to the class. Significantly, Rule 23(a)(2) does not require that plaintiffs establish that all facts or legal issues are common to the class. It requires only a single question of law or fact common to the class. *Anderson v. Boeing Co.*, 222 F.R.D. 521, 531 (N.D. Ok. 2004); *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir.1999). This standard is clearly satisfied here, where Plaintiff has asserted claims under the Truth-in-Leasing regulations based on contractual documents and compensation practices that are the same for all members of the class.

Third, Plaintiff Jackson's claims are typical of the class. The interests and claims of the representative plaintiffs and class members need not be identical to satisfy typicality. *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir.1982). Typicality is satisfied when a representative plaintiff's claims stem from the same practice or course of conduct forming the basis of the class claims and is based upon the same legal or remedial theory. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 221, 229 (D. Kan. 2010).

Plaintiff's claims are typical of the Class. Plaintiffs' claims under the Truth-in-Leasing regulations arise from the same course of conduct and legal theory: alleged failure to adhere to the regulations in the contracts with and compensation of drivers. If this case did not settle, Plaintiffs would attempt to prove these claims on behalf of the Class by resort to the same evidence: WFX's uniform contractual agreements; WFX's compensation policies and practices; and amounts paid by WFX as compared to amounts deducted from drivers' compensation. Plaintiff's claims are therefore typical.

Fourth, Plaintiff and Class Counsel will fairly and adequately protect the interests of the class. "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002).

There are no conflicts of interest or antagonism between Plaintiff and his counsel and the Class. Plaintiff and the absent Class Members have a shared interest in recovering the money to which they are entitled under the Truth-in-Leasing regulations. To represent

himself and the Class, Plaintiff retained counsel highly experienced in class action litigation (and, particularly, class action litigation on behalf of truck drivers).[2]  Plaintiff and his counsel have prosecuted, and will continue to prosecute, this action vigorously on behalf of the Class. Adequacy of representation requirement is satisfied.

Finally, the requirements of Fed. R. Civ. P. 23(b) are satisfied.  First, questions of law and fact common to class members predominate over individual issues.  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "It is not necessary that all of the elements of the claim entail questions of fact and law that are common to the. class, nor that the answers to those common questions be dispositive." *Menocal v. GEO Group, Inc.*, 882 F.3d 905, 914-15 (10th Cir. 2018). "Put differently, the predominance prong asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."  *Id*. (quotations omitted). The Court must "characterize the issues in the case as common or not, and then weigh which issues predominate." *Id*. The Court does so by "consider[ing] ... how the class intends to answer factual and legal questions to prove its claim—and the extent to which the evidence needed to do so is common or individual." *Id*.

---

[2] *See* Schwab Decl. ¶¶ 3-14.

Plaintiff's claims are predominated by common questions of law and fact. These common questions include: the language of WFX's contracts with its drivers; whether or not those contracts properly disclosed and described all chargebacks; the amounts deducted from drivers' pay pursuant to the contract and otherwise; and the amounts actually paid by WFX as compared to those amounts deducted.

Second, a class action is superior to any other available method for the fair and efficient adjudication of the controversy. The superiority requirement is designed to ensure the "'vindication of the rights of groups of people who individually would be without effective strength to bring their opponents to court at all.'" *Amchem Prods., Inc. v. Windsor*, 512 U.S. 591, 617 (1997). Here, it is in class members' interests to have this case proceed on a class basis for several reasons, including that: the claims are the same for all class members, so it is more efficient to try them together; many class members may only have small amounts in damages, so they may not be incentivized to pursue a case individually; and many class members may still work for WFX (and/or in the trucking industry generally) and may be reluctant to bring claims for fear of retaliation. *See, e.g., Braver v. Northstar Alarm Svcs., Inc.*, 329 F.R.D. 320, 333 (W.D. Okla. 2018) ("The 'class action device is frequently superior where proceeding individually would be difficult for class members with small claims.'"); *Overka v. American Airlines, Inc.*, 265 F.R.D. 14, 24 (D. Mass. 2010) (class action superior where plaintiffs argued that "fear of employer retaliation may have a chilling effect on employees bringing claims on an individual basis").

Numerous courts have granted class certification in cases brought on behalf of truck drivers under the Truth-in-Leasing regulations. *See, e.g., Yata v. BDJ Trucking Co.*, 2020

WL 1062332 (N.D. Ill. Mar. 5, 2020); *Fox v. TransAm Leasing, Inc.*, 2014 WL 2604035 (D. Kan. Jun. 11, 2014); *Davis v. Colonial Freight Systems, Inc.*, 2018 WL 11225871 (E.D. Tenn. Mar. 2, 2018); *Foster v. CEVA Freight, LLC*, 272 F.R.D. 171 (W.D.N.C. 2011); *Owner-Operator Independent Drivers Ass'n, Inc. v. Allied Van Lines, Inc.*, 231 F.R.D. 280 (N.D. Ill. 2005); *Owner-Operator Independent Drivers Ass'n, Inc. v. C.R. England, Inc.*, 2005 WL 2098919 (D. Utah Aug. 29, 2005); *Sheinhartz v. Saturn Transp. System, Inc.*, 2002 WL 575636 (D. Minn. Mar. 26, 2002); *Owner-Operator Independent Drivers Ass'n, Inc. v. Arctic Express, Inc.*, 2001 WL 34366624 (S.D. Ohio Sept. 4, 2001).

**C.    The proposed settlement is fair, reasonable, and adequate and should be preliminarily approved.**

The Tenth Circuit has identified four factors to determine whether a settlement is fair, reasonable, and adequate: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)); *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).  As demonstrated below, the settlement satisfies each of the criteria and thus warrants this Court's preliminary approval.

> 1.    The proposed settlement is the product of extensive arm's-length negotiations between experienced counsel and assisted by an experienced mediator.

Where, as here, a settlement results from "arm's length negotiations between experienced counsel after significant discovery [has] occurred, the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas*, 234 F.R.D. at 693; *see also* MANUAL FOR COMPLEX LITIG. (THIRD) § 30.42, at 238. This action has been pending for almost a year and half. During this time, the parties engaged in motion practice and then undertook a lengthy negotiation/mediation process that involved identification and exchange of documents and data, legal and factual arguments, and extensive back-and-forth negotiation, assisted by an experienced mediator. Schwab Decl. ¶ 26. The negotiation process was exhaustive and hard-fought.

Courts in this Circuit have found settlements fairly and honestly negotiated where "[t]he completeness and intensity of the mediation process, coupled with the quality and reputations of the mediator, demonstrate a commitment by the [p]arties to a reasoned process for conflict resolution that took into account the strengths and weaknesses of their respective cases and the inherent vagaries of litigation." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 285 (D. Colo. 1997); *see also Horton v. Molina Healthcare, Inc.*, 2019 WL 2207676, at *1 (N.D. Okla. May 22, 2019) (finding a proposed class action settlement agreement fair and reasonable because, *inter alia*, it was "negotiated in good faith at arms' length between experienced attorneys familiar with the legal and factual issues of this case aided by an experienced and neutral third-party mediator"); *Ashley v. Reg'l Transp. Dist.*, 2008 WL 384579, at *5-*6 (D. Colo. Feb. 11, 2008) (settlement fairly and honestly negotiated where the parties engaged in formal settlement mediation conference and negotiations over four months); *see also Marcus v. Kan. Dept. of Revenue*,

209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable.").

This settlement is a product of serious, informed, and non-collusive negotiations among experienced counsel and the mediator, and warrants preliminary approval.

    2.    Serious questions of law and fact exist, and the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.

Numerous serious questions of law and fact exist in this action, all of which are the subject of considerable risk if this case were to continue to be litigated.[3] Schwab Decl. ¶ 28. Some of the risks specific to this case include: (1) that WFX may prevail on the merits of its motion to dismiss based on the notice provision in the contract, *see* Ct. Ord. on Mot. to Dismiss, at 5 (ECF Doc. 31) ("Though upon initial review the Court is sympathetic to Defendant's arguments, the Court finds it premature to address this argument prior to the mandatory mediation."); (2) the potential that the class will not be certified or will be only partially certified; and (3) risks relating to the ascertainment and quantification of damages for Plaintiff's claims. Schwab Decl. ¶ 29; *see Owner-Operator Independent Drivers Ass'n, Inc. v. Landstar System, Inc.*, 622 F.3d 1307, 1325 (11th Cir. 2010) (plaintiffs "must prove actual damages" to prevail on claim under Truth-in-Leasing regulations).

---

[3]    *See also Wilkerson*, 171 F.R.D. at 285 (the value of an immediate recovery, the "monetary worth of the settlement," "is to be weighed not against the net worth of the defendant, but against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993))).

These are serious questions of law and fact that create great uncertainty in Class Members' ability to recover anything. Schwab Decl. ¶ 30. "The presence of such doubt tips the balance in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008).

Moreover, the complexity, uncertainty, additional expense, and likely duration of further litigation also favor preliminary approval of the settlement. *See In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 681 (D. Kan. 2009) (granting preliminary approval because, *inter alia*, "[t]he costs of continued litigation are high, and it is possible that plaintiffs could receive little or no pecuniary relief"); *Ashley*, 2008 WL 384579, at *7. "The class will be well compensated, relatively speaking, and is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." *McNeely*, 2008 WL 4816510, at *13.

This settlement represents not only a meaningful, immediate recovery for the Class, but also one without any risk or additional expenses of further litigation. Schwab Decl. ¶ 31. This benefit must be considered to the risk that the Class may recover nothing after certification proceedings, summary adjudication, appeals, contested trial, and most likely, further appeals, many years into the future, or that litigation would deplete funds available to satisfy a judgment. *Id.*, ¶ 32. These factors thus support preliminary approval of the proposed settlement.

3. The parties agree that the settlement is fair and reasonable, further supporting preliminary approval.

"Counsel['s] judgment as to the fairness of the agreement is entitled to considerable weight." *Childs v. Unified Life Ins. Co.*, 2011 WL 6016486, at *14 (N.D. Okla. Dec. 2, 2011) (quoting *Lucas*, 234 F.R.D. at 695 and *Marcus*, 209 F. Supp. 2d at 1183)). "In addition to considering the judgment of the parties with respect to the proposed settlement, the Court should also 'defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Johnson v. Tulsa*, 2003 U.S. WL 24015151, at *11 (N.D. Okla. May 12, 2003).

Here, Class Counsel and WFX's counsel – law firms with great experience in complex class litigation, particularly in truck driver cases – have agreed to settle this Action after serious arms-length negotiation, extensive exchange of discovery, and many months of discussions. Schwab Decl. ¶ 33. Class Counsel believes that the settlement amount is fair and reasonable in light of their extensive investigation, motion practice, the risks of continued litigation, and their overall experience. *Id.*, ¶ 34. Plaintiff and Class Counsel further recognize the great expense and length of proceedings necessary to continue this litigation against WFX through formal discovery, certification, summary judgment, trial, and inevitable appeals. *Id.*

Based on Class Counsel's estimates, the Gross Settlement Amount of $800,000.00 represents a significant portion of the total calculated exposure at trial, especially in light of the risks discussed *supra*. *Id.* There are many ways to calculate economic damages in these types of cases, and all of them would likely have been the subject of substantial and

costly economic expert discovery. *Id*. Class Counsel estimates that WFX's maximum likely potential exposure for the claims asserted in the Complaint, on behalf of the entire putative class, is approximately $6,000,000.00. This assumes, of course, class certification and full success on the merits as to all of Plaintiff's legal theories. The proposed settlement of $800,000.00 is a reasonable percentage of that "best case scenario." Schwab Decl. ¶¶ 36-37. Obviously, WFX disputes such exposure calculation, and in fact, produced sufficient information in the confidential negotiations between the parties to produce the result outlined in these pleadings.

Given the risks, delays, and uncertainty inherent in continued litigation, Plaintiff and Class Counsel believe that the settlement is fair and reasonable to avoid the cost and uncertainty of continuing litigation. *Id*., ¶ 38.

4.    The proposed notice is reasonable.

The Court must ensure that Class Members receive the best notice practicable under the circumstances of the case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Rule 23 (e) (1) requires that the Court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "Notice" in this context consists of both the form and manner in which Class Members will be notified of the Settlement and the final fairness hearing.

Id. The notice must "fairly apprise . . . prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012) (internal quotations omitted).

Here, the proposed Notice of Proposed Class Action Settlement ("Notice"), attached as Exhibit 1 to the Stipulation of Settlement, and manner of distribution negotiated and agreed upon by the Parties are "the best notice practicable." Schwab Decl. ¶ 47; Fed. R. Civ. P. 23 (c) (2)(B). The proposed Notice fulfills the requirement of neutrality in class notices. *Id. See* Conte, NEWBERG ON CLASS ACTIONS, § 8.39 (3rd Ed. 1992). It summarizes the proceedings necessary to provide context for the settlement and summarizes the terms and conditions of the settlement, including an explanation of how the Gross Settlement Amount will be allocated between the Plaintiff, Class Counsel, the Settlement Administrator, and the Class Members, as applicable, in an informative, coherent and easy-to-understand manner, all in compliance with the Manual for Complex Litigation's recommendation that "the notice contain a clear, accurate description of the terms of the settlement." Schwab Decl. ¶ 48; MANUAL FOR COMPLEX LITIGATION, Settlement Notice, § 21.312 (4th ed. 2004).

The Notice is written in plain and easily understood language and clearly, fairly, and concisely describe the nature of the Action, the definition of the Class, the Class claims and issues, that Class Members may object and appear personally or enter an appearance through an attorney if desired, that the Court will exclude from the Class any member who requests exclusion, the binding effect of a class judgment on the Class Members and the

releases, Class Counsel's contact information, the settlement Administrator's contact information, the significant terms of the Settlement and the total amount WFX has agreed to pay the Class, and the Court approval process, including Class Counsel's request for attorneys' fees and reasonable expenses, as well as for a service award on behalf of Plaintiff Jackson. *See* Settlement, Ex. 1; *see also* Schwab Decl. ¶ 49.

The proposed Notice thus fairly apprises Class Members of the settlement's terms, the schedule for future events and deadlines, and their legal rights in connection with the proceedings. Schwab Decl. ¶ 50; *see, e.g., Gooch*, 672 F.3d at 423 ("When a class has settled its claims, '[t]he contents of a . . . notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, . . . that any class member may appear and be heard at the hearing,' . . . and 'information [about] the class members' right to exclude themselves and the results of failure to do so.'" (internal citation omitted)); *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D 262, 272 (E.D. Ky. 2009) (finding that the proposed notice – similar to the notice proposed here – satisfied the requirements of Rule 23(c)(2)(B)).

The plan for dissemination of the Notice is also fair, reasonable, and adequate. All Class Members have been identified, and the Notices will be sent to each Class Member via text, email, and/or first-class mail. Additionally, appropriate and reasonable efforts will be made by the Settlement Administrator to update the contact information in the database and to search for any outdated addresses, and a settlement website will be

available for Class Members to review all relevant settlement documents and contact information and submit claim forms. *See* Schwab Decl. ¶ 51. This method of disseminating notice is unquestionably reasonable. *See, e.g., Haworth v. New Prime, Inc.*, No. 6:19-03025-CV-RK, 2020 WL 1899276, at *2 (W.D. Mo. Apr. 16, 2020) ("[T]he Court authorizes notice by email with a 60-day opt-in period . . ."); *Romero v. Clean Harbors Surface Rentals USA, Inc.*, 368 F. Supp. 3d 152, 163 (D. Mass. 2019) ("[T]he Court agrees with Romero that email notice is appropriate in this case because it is likely to be more effective than alternative methods."); *Graham v. Hall's S. Kitchens, LLC*, No. 2:18-CV-02621-RMG, 2018 WL 6177971, at *2 (D.S.C. Nov. 27, 2018) ("[T]he Court finds that notice via email is appropriate in today's mobile society."); *Landry v. Swire Oilfield Servs., L.L.C.*, 252 F. Supp. 3d 1079, 1129 (D.N.M. 2017) ("The Court finds persuasive the Plaintiffs' argument that communication via email and text message will 'increase the chance of the class members receiving and reading the notice.'").

The proposed plan for submission of claim forms is that individuals be permitted to submit claim forms to participate in the settlement on the settlement website, using secure electronic signatures, or via traditional methods of email, fax or mail. This plan is reasonable and assures that there will be no unreasonable barriers to class members participating in the settlement. Schwab Decl. ¶ 42. Courts routinely approve plans such as this one. *See, e.g., Wade v. Furmanite Am., Inc.*, No. 3:17-CV-00169, 2018 WL 2088011, at *8 (S.D. Tex. May 4, 2018) (noting that "recent technological advances . . . have made electronic signatures trustworthy, valid, and enforceable"); *Landry*, 252 F. Supp. 3d at 1130 ("[T]he Court concludes that class members should be allowed to

electronically execute their consent forms."); *Mraz v. Aetna Life Ins. Co.*, No. 3:12-CV-805, 2014 WL 5018862, at \*5 (M.D. Pa. Oct. 7, 2014) ("[W]e live in a time when all manner of commercial transactions are routinely cemented by electronic submission."); *see also* Fed. R. Civ. P. 5(d)(3) ("A court may . . . allow papers to be filed, signed, or verified by electronic means. . ."); *Romero*, 368 F. Supp. 3d at 163 ("Romero's counsel is permitted to create a standalone webpage through which group members can electronically submit their consent forms.").

The content of the notice, the plan for its dissemination among class members, and the plan for submission of claim forms are all fair, reasonable, and adequate and supported by substantial precedent and should be approved by this Court. Schwab Decl. ¶ 53.

5. The Court should approve the proposed schedule.

The Settlement Agreement contains the following proposed schedule, which Plaintiffs respectfully request this Court approve:

| Activity | Deadline |
|---|---|
| Filing of preliminary settlement approval motion | May 22, 2023 |
| WFX to issue CAFA Notice on the appropriate federal and state officials, as required by 28 U.S.C. § 1715(b) | 14 days after filing of preliminary settlement approval motion (June 5, 2023) |
| Notice to issue to Class Members | 14 days after Preliminary Settlement Approval Order |
| WFX to deposit $400,000 into Qualified Settlement Fund established by settlement administrator | 60 days after Preliminary Settlement Approval Order |
| Reminder notice to issue | 30 days before Claim, Opt-Out, and Objection Deadline |

| | |
|---|---|
| Claim, Opt-Out, and Objection Deadline | 60 days after sending of Class Notice |
| Deadline for WFX to deposit remaining $400,000 into Qualified Settlement Fund established by settlement administrator | 10 days after Claim, Opt-Out, and Objection Deadline |
| Requested date for Final Approval and Fairness Hearing | 120 days after Preliminary Settlement Approval Order |
| Class Counsel to file settlement administrator's declaration of due diligence and proof of mailing of the Class Notice and the Opt-Out Requests in Court | 7 days before Final Approval and Fairness Hearing |
| Effective Date | Date on which all appeals have been exhausted or all appeal periods have run after issuance of the Final Settlement Approval Order, or, if no objections are filed, the date of issuance of the Final Settlement Approval Order |
| Class Counsel to provide a copy of the Final Settlement Approval Order to the Settlement Administrator | 7 days after Effective Date |
| Deadline for Settlement Administrator to make payments under the Settlement to Class Participants, Plaintiff for the Service Award, Class Counsel for attorneys' fees and costs, and itself for Administration Costs | 14 days after Effective Date |
| Settlement Administrator to file with the Court and provide to Class Counsel and Defense Counsel a declaration of payment | 14 days after mailing settlement checks |
| Settlement Administrator to send reminder letter via U.S. mail to Class Participants who have not yet cashed their Individual Settlement Amounts | 90 days after mailing settlement checks |
| Settlement Administrator to place call to Class Participants that have still not cashed their check to remind them to do so | 120 days after mailing settlement checks |

| | |
|---|---|
| Deadline for Class Participants to cash or deposit Individual Settlement Amount checks | 180 days after mailing settlement checks |
| Uncashed checks to be distributed on cy pres basis to in equal portions to: (1) St. Christopher Truckers Relief Fund, and (2) Truckers Final Mile | 30 days after deadline for cashing or depositing Class Participants' checks |

*See* Settlement Agreement (Exhibit A).

**V.    CONCLUSION**.

For the foregoing reasons, Plaintiffs respectfully request that this Court grant preliminary approval of the Settlement as to the Class, in accordance with the schedule set forth herein.  A proposed Order is attached hereto as Exhibit B.

Respectfully submitted,

KELVIN JACKSON, individually
and on behalf of all others similarly situated,

_/s/ Hillary Schwab_
Hillary Schwab, Esq., admitted *pro hac vice* and
subsequently admitted to practice in the District
Court for the Western District of Oklahoma, Feb.
7, 2022
Rachel Smit, Esq., admitted *pro hac vice*
Brant Casavant, Esq., admitted *pro hac vice*
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel:  (617) 607-3260
Fax:  (617) 488-2261
hillary@fairworklaw.com
rachel@fairworklaw.com
brant@fairworklaw.com

Jeff A. Taylor
State Bar No. 17210
The Offices at Deep Fork Creek
5613 N. Classen Blvd
Oklahoma City, OK  73118
Telephone:    (405) 286-1600
Telecopy:     (405) 842-6132

*Counsel for Plaintiff*

Dated:  May 22, 2023

## CERTIFICATE OF SERVICE

I certify that on May 22, 2023, I electronically transmitted this document to the Clerk of the United States District Court for the Western District of Oklahoma using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronical Filing to the following ECF registrants:

Christopher M. Scaperlanda, Esq.
*Counsel for Defendant*

 */s/ Hillary Schwab*
Hillary Schwab