**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

_____
                                                              )
KELVIN JACKSON, individually                )
and on behalf of all others                         )
similarly situated,                                       )
                                                              )
                         Plaintiffs,                      )          Civil Action No. 5:22-cv-00068-J
                                                              )
v.                                                             )
                                                              )
WESTERN FLYER EXPRESS, LLC,           )
                                                              )
                         Defendant.                     )
_____  )

### PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF

Plaintiff Kelvin Jackson, on behalf of himself and all others similarly situated, hereby moves this Court for an order:

1.       Granting this motion and holding that the settlement is fair, reasonable, and adequate;

2.       Certifying the Settlement Class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3);

3.       Finding that the notice provided to Settlement Class Members was the best notice practicable and fully satisfied the requirements of the Federal Rules of Civil Procedure, due process, and any other applicable laws;

4.      Awarding Class Counsel $266,667.00 in attorneys' fees and $34,628.35 in costs, to be paid out of the settlement fund;[1]

5.      Approving the proposed service award of $15,000 for named plaintiff Kelvin Jackson;[2]

6.      Approving the proposed distribution of settlement funds as set forth in Plaintiffs' motion for final settlement approval;

7.      Overruling the objection filed at ECF Doc. No. 48;

8.      Ordering that the payments be made in this matter pursuant to the timetable established in the parties' Settlement Agreement; and

9.      Entering judgment pursuant to Federal Rule of Civil Procedure 54 and dismissing with prejudice all claims released as part of this settlement.

A proposed final settlement approval order is attached as Exhibit 1.

Plaintiffs bring this Motion pursuant to Federal Rules of Civil Procedure 23(e) and long-established precedent requiring Court approval for class action settlements. This Motion is based on the accompanying Memorandum of Law, the Declaration of Hillary Schwab, the Declaration of Scott Simpson, the accompanying exhibits, and all other records, pleadings, and papers on file in this action. Defendant does not oppose this Motion.

---

[1]      Plaintiff's Petition for Attorneys' Fees and Expenses and for a Service Award for Plaintiff Kelvin Jackson (ECF Doc. No. 46) is incorporated herein by reference.

[2]      *See* n.1, *supra*.

## I.    INTRODUCTION.

This class action has brought on behalf of individuals who have worked as contracted drivers for Defendant Western Flyer Express, LLC ("WFX") pursuant to Contracted Operator Agreements with WFX. The Action is based on WFX's alleged violations of the federal Truth-in-Leasing regulations, 49 C.F.R. § 376.1, *et seq*.

After several months of litigation, followed by extensive arm's-length negotiations (including two full-day mediation sessions), the Parties have reached a global settlement of the Action, memorialized in the proposed Joint Stipulation of Settlement ("Settlement Agreement"), ECF Doc. No. 42-1. Plaintiffs now seek final approval of the Settlement.

The Parties have resolved the claims of approximately 2,177 contracted operators, for a total non-reversionary settlement amount of $800,000. With this proposed settlement, the Parties are resolving claims unlikely to have been prosecuted as individual actions. The settlement provides an excellent benefit to the Class and an efficient outcome in the face of risky litigation. The settlement is fair, reasonable, and adequate in all respects, and Plaintiffs respectfully request that the Court grant the requested approval.

## II.    BACKGROUND.

On January 24, 2022, Plaintiffs filed a class action complaint against WFX, alleging that WFX had violated the federal Truth-in-Leasing regulations in its contracts and compensation practices with contracted operators. *See* ECF Doc. No. 1. WFX filed a motion to dismiss the case, asserting that Plaintiff had not alleged in his complaint two

conditions precedent to bringing the case, namely that Plaintiff had not asserted that he had complied with WFX's contractual "mandatory mediation provision" and that Plaintiff had not asserted that he had complied with a "notice-and-cure clause" in the agreement. ECF Doc. No. 22. Plaintiff opposed WFX's motion. ECF Doc. No. 29. The Court issued an Order on WFX's motion to dismiss on May 3, 2022. ECF Doc. No. 31. The Court granted WFX's motion in part and denied it in part, specifically ordering the parties to mediation and administratively closing the case "without prejudice to the right of either party to reopen the proceedings for any purpose." *Id*. at 5.

As ordered by the Court, the parties attended a mediation session on August 15, 2023, with mutually agreed-upon mediator James Gibbs, Esq. of Dispute Resolution Consultants of Oklahoma City, Oklahoma. At that mediation session, the parties agreed to the exchange of extensive data and documentation from which Class Counsel could assess the potential damages for the class and scheduled another mediation session with Attorney Gibbs. The second mediation session was held on October 13, 2023. Though the parties did not reach a resolution at the second mediation, they continued to negotiate for several weeks, both through separate calls with the mediator and through direct negotiation. Finally, after lengthy arms-length negotiations, the parties reached a proposed class wide resolution of this matter. Schwab Decl. ¶ 5-7.

After negotiation, the parties executed the Joint Stipulation of Settlement on May 22, 2023. Schwab Decl. ¶ 8.

## III. NOTICE PROCESS AND RESULTS

Pursuant to the Court-approved notice process, notice of the settlement was sent by three methods to the 2,186 settlement class members for whom such contact information was available: by first-class mail, by email, and by text message (containing a link to the settlement website containing the full notice). Simpson Decl. ¶ 4. These individuals were sent the notice approved by the Court on June 12, 2023 (ECF Doc. No. 45). *Id*., ¶ 4. A copy of the Notice that was sent to class members is attached as Exhibit 2.

A settlement website was created, www.wfxsettlement.com. Simpson Decl. ¶ 5. The website contained the notice, a link to file a claim, contact information for the settlement administrator and Plaintiffs' counsel, and a form to submit a message online to the settlement administrator. Schwab Decl. ¶ 9.

A reminder was sent approximately halfway through the claim period, on July 21, 2023, to class members who had not yet responded to the notice. The reminder was sent by was sent by first-class mail, email, and text. Simpson Decl. ¶ 11.

### A. Notice Results

Notice was mailed to all 2,186 class members, texted to 2,185 individuals, and emailed to 2,183 individuals. When the notices sent by first-class mail were returned as undeliverable, the settlement administrator looked for more up-to-date addresses in a people-finding database called Delvepoint and re-issued the notice to the updated address. Of the 2,186 individuals who were issued notice by first-class mail, 386 were returned as undeliverable. Using Delvepoint, Optime was able to locate new or updated

addresses for 169 of those 386 individuals. There were 217 undeliverables from the first-class mailing of the notice. Simpson Decl. ¶¶ 6-9.

After follow-up from undeliverables, notice reached 2,183 of the 2,186 class members (either by first-class mail, electronic mail, text message, or some combination of these three). Many class members received notice by multiple means. Only three class members did not receive the notice sent to them by any of the three methods. *See* Simpson Decl. ¶ 9.

The results of the notice process as of today's date are as follows:

| Category | Number |
|---|---|
| Total Eligible to Claim | 2,186 |
| Valid Claim Forms to Date[3] | 1,174 |
| Requests for Exclusion | 9 |
| Objections | 1 |

Simpson Decl. ¶¶ 4, 12-13.

## IV. DISTRIBUTION OF SETTLEMENT AMOUNTS

The total amount of the Settlement Fund is $800,000.00. The settlement is non-reversionary, meaning that no part of the Settlement Fund shall revert back to the Defendant. Settlement Agreement (ECF Doc. No. 42-1), ¶ I.19.

---

[3]     A handful of claim forms have been received late and/or from individuals whose names cannot be matched with the names of class members. Plaintiffs' counsel and the settlement administrator intend to work cooperatively with defense counsel to ensure that as many of these individuals as can participate in the settlement are able to do so.

Pursuant to the parties' Settlement Agreement, the Settlement Fund is to be divided as follows:

| Category | Amount |
|---|---|
| Attorneys' fees for Plaintiffs' counsel | Up to $266,667 |
| Service award for Plaintiff Kelvin Jackson | Up to $15,000 |
| Costs (including settlement administration) | Up to $34,628.35 |
| Dispute fund[4] | $10,000 |
| Class distribution[5] | $473,704.65 |
| Total | $800,000 |

Settlement Agreement (ECF Doc. No. 42-1), ¶¶ I.19, III.

### A.    Settlement distribution based on valid claims submitted to date

Class members' settlement shares are to be distributed proportional to their weeks driven during the applicable time period, except that class members shall receive minimum payments of at least $20.00.  Settlement Agreement (ECF Doc. No. 42-1), ¶ V.3.

The amounts to be distributed to class members are based on the valid claims received to date.  To the extent that additional claims are received before the money is distributed (or deficiencies in currently invalid claim forms are resolved), Plaintiffs will endeavor to include those individuals in the distribution.  However, Plaintiffs expect that

---

[4]    The Settlement Agreement provides for a Dispute Fund of up to $50,000.  *See* Settlement Agreement (ECF Doc. No. 42-1), ¶ I.16.  Given the high claim rate and the effectiveness of the notice and to ensure that as much of the settlement fund is distributed to class members as possible, Plaintiff's counsel proposes that the dispute fund be $10,000, with the rest to be distributed to claiming class members.  Schwab Decl. ¶ 11.

[5]    If the Court does not award the requested amounts for attorneys' fees, costs, and the service award, those amounts would go to the class distribution.  Settlement Agreement (ECF Doc. No. 42-1), ¶ III.4.

any such additions will result in only slight modifications to the amounts set forth below. Plaintiffs estimate that, at most, the additional claims that come in through these outstanding processes would result in a 5% downward adjustment of class members' settlement shares. Schwab Decl. ¶ 12.

Based on currently available information about valid claims, the range of payments to class members is between $20 (the minimum payment) and $1,646.78. Approximately 130 class members are set to receive over $1,000 from the settlement, and over 300 class members will receive more than $500. Most class members (all but 258) will receive over $100, and those who are receiving less than that drove for WFX for only a very short period of time (six weeks or less). The average payment is $413.55. Class members will be receiving approximately $16 per week of work. Schwab Decl. ¶ 13.

## B. Schedule for payments

Pursuant to the settlement agreement, settlement payments shall be issued by check within fourteen days after final approval of the settlement (including exhaustion of appeals, if any). Individuals shall have 180 days to deposit or cash checks from the settlement. After the expiration of the checks, amounts from any uncashed checks (and any funds not distributed from the Dispute Fund) shall be paid on a *cy pres* basis to St. Christopher Truckers Relief Fund (50%) and Truckers Final Mile (50%). Settlement Agreement (ECF Doc. No. 42-1), ¶¶ VI.7, VI.8.

### C.    Release of claims

Pursuant to the parties' agreement, Named Plaintiff Kelvin Jackson and WFX would agree to a mutual general release of claims.  Settlement Agreement (ECF Doc. No. 42-1), ¶ IX.2.

Under the agreement, Class members release WFX from "all claims under the Truth-in-Leasing regulations, 49 C.F.R. § 376.1, *et seq.*, that were or could have been brought in this action."  Settlement Agreement (ECF Doc. No. 42-1), ¶ IX.1.

Additionally, WFX has agreed to release all class members who submit claims (aka "Class Participants") "from all known and unknown monetary claims relating in any way to the Class Participants' use of WFX equipment and/or the Class Participants' payment obligations to WFX, including, but not limited to chargebacks, deductions, and reimbursements."  Settlement Agreement (ECF Doc. No. 42-1), ¶ IX.3.

## ARGUMENT

## I.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

### A.    Legal standard

Courts strongly favor settlement as a method for resolving disputes.  *See Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972); *see also Sears v. Atchison, Topeka & Santa Fe Ry.*, Co., 749 F.2d 1451, 1455 (10th Cir. 1984); *Trujillo v. Colo.*, 649 F.2d 823, 826 (10th Cir. 1981) (citing "important public policy concerns that support voluntary settlements").  This is especially true in class actions, such as this case. *See Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001).  "[The] presumption in favor of voluntary settlement agreements is especially

strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. May 19, 2014); *see also Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980) ("In the class action context in particular, there is an overriding public interest in favor of settlement. . . .").

Fed. R. Civ. P. 23 (e) requires judicial approval for any compromise of claims brought on a class-wide basis. "Preliminary approval of a class settlement requires the Court to assess (1) whether the matter is suitable for certification as a class action under Rule 23 and (2) the overall fairness of the proposed settlement . . . [and] the adequacy of the notice the parties propose to send out." *Gundrum v. Cleveland Integrity Servs.*, 2017 WL 3503328, at *5 (N.D. Okla. Aug. 16, 2017) (internal quotation marks and citation omitted). The "objective of the court's inquiry at the preliminary approval stage is to determine whether to direct notice of the proposed settlement to class members, permit the opportunity for objections, and schedule a fairness hearing." *Id.* (citing *Tripp v. Rabin*, 2016 WL 3615572, at *2 (D. Kan. July 6, 2016)). "Because preliminary approval is just the first step, courts apply a 'less stringent' standard than that at final approval." *Tripp*, 2016 WL 3615572, at *2.

The standard for approval of a settlement is that the settlement is fair, adequate and reasonable to the class. *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 128 (D. Colo. 2016). A trial court may certify a class when it determines the proposed class satisfies the prerequisites of Federal Rule of Civil Procedure 23(a), and one of the requirements of Rule 23(b). *See Shook v. El Paso Cnty.*, 386 F.3d 963, 971 (10th Cir.

2004); *Tabor v. Hilti, Inc.*, 703 F.3d 1206 (10th Cir. 2013); *Gundrum*, 2017 WL 3503328, at *6 (citing *Pliego*, 313 F.R.D. at 128).

Here, as set forth below, the settlement class should be certified under Rule 23, and the settlement is fair, reasonable, and adequate.

### B. The Court should certify the class for settlement pursuant to Federal Rule of Civil Procedure 23(b)(3).

The trial court may certify a class when it determines the proposed class satisfies the prerequisites of Federal Rule of Civil Procedure 23(a), and one of the requirements of Rule 23(b). *See Shook v. El Paso Cnty.*, 386 F.3d 963, 971 (10th Cir. 2004); *Tabor v. Hilti, Inc.*, 703 F.3d 1206 (10th Cir. 2013). In performing its analysis under Rule 23, the Court "must accept the substantive allegations of the complaint as true[.]" *Midland Pizza, LLC v. Sw. Bell Tel. Co.*, 277 F.R.D. 637, 639 (D. Kan. 2011) (quoting *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir.2010)). Here, the putative class readily meets the requirements for Rule 23 class certification.

The requirements under Rule 23(a) for class certification are: (1) "the class is so numerous that joinder of all members is impracticable"; (2) "there are questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

First, there is numerosity. There are over 2,000 class members, Schwab Decl. ¶ 21, which is well above the threshold that courts hold typically satisfies numerosity. *See, e.g., Francis v. APEX USA, Inc.*, 406 F. Supp. 3d 1206, 1213 (W.D. Okla. 2019)

(complaint allegation of 50 to 100 individuals sufficed to plead numerosity). Moreover, as the Tenth Circuit has held, "district courts are granted 'wide latitude' in making the numerosity determination." *Id.* (quoting *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014)). Here, where the class is confirmed to include over two thousand individuals, this element is unquestionably satisfied.

Second, there are numerous questions of law and fact common to the class. Significantly, Rule 23(a)(2) does not require that plaintiffs establish that all facts or legal issues are common to the class. It requires only a single question of law or fact common to the class. *Anderson v. Boeing Co.*, 222 F.R.D. 521, 531 (N.D. Ok. 2004); *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir.1999). This standard is clearly satisfied here, where Plaintiff has asserted claims under the Truth-in-Leasing regulations based on contractual documents and compensation practices that are the same for all members of the class.

Third, Plaintiff Jackson's claims are typical of the class. The interests and claims of the representative plaintiffs and class members need not be identical to satisfy typicality. *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir.1982). Typicality is satisfied when a representative plaintiff's claims stem from the same practice or course of conduct forming the basis of the class claims and is based upon the same legal or remedial theory. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 221, 229 (D. Kan. 2010).

Plaintiff's claims are typical of the Class. Plaintiffs' claims under the Truth-in-Leasing regulations arise from the same course of conduct and legal theory: alleged

failure to adhere to the regulations in the contracts with and compensation of drivers. If this case did not settle, Plaintiffs would prove these claims on behalf of the Class by resort to the same evidence: WFX's uniform contractual agreements; WFX's compensation policies and practices; and amounts paid by WFX as compared to amounts deducted from drivers' compensation. Plaintiff's claims are therefore typical.

Fourth, Plaintiff and Class Counsel will fairly and adequately protect the interests of the class. "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002).

There are no conflicts of interest or antagonism between Plaintiff and his counsel and the Class. Plaintiff and the absent Class Members have a shared interest in recovering the money to which they are entitled under the Truth-in-Leasing regulations. To represent himself and the Class, Plaintiff retained counsel highly experienced in class action litigation (and, particularly, class action litigation on behalf of truck drivers).[6] Plaintiff and his counsel have prosecuted, and if the settlement is not approved will continue to

---

[6]     *See* Schwab Decl. in Support of Prelim. Approval (ECF Doc. No. 42-2), ¶¶ 3-14; Pl.'s Petition for Attorneys' Fees and Expenses and a Service Award for Plaintiff Kelvin Jackson (ECF Doc. No. 46).

prosecute, this action vigorously on behalf of the Class. Adequacy of representation requirement is satisfied.

Finally, the requirements of Fed. R. Civ. P. 23(b) are satisfied. First, questions of law and fact common to class members predominate over individual issues. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "It is not necessary that all of the elements of the claim entail questions of fact and law that are common to the. class, nor that the answers to those common questions be dispositive." *Menocal v. GEO Group, Inc.*, 882 F.3d 905, 914-15 (10th Cir. 2018). "Put differently, the predominance prong asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id*. (quotations omitted). The Court must "characterize the issues in the case as common or not, and then weigh which issues predominate." *Id*. The Court does so by "consider[ing] ... how the class intends to answer factual and legal questions to prove its claim—and the extent to which the evidence needed to do so is common or individual." *Id*.

Plaintiff's claims are predominated by common questions of law and fact. These common questions include: the language of WFX's contracts with its drivers; whether or not those contracts properly disclosed and described all chargebacks; the amounts deducted from drivers' pay pursuant to the contract and otherwise; and the amounts actually paid by WFX as compared to those amounts deducted.

Second, a class action is superior to any other available method for the fair and efficient adjudication of the controversy. The superiority requirement is designed to ensure the "'vindication of the rights of groups of people who individually would be without effective strength to bring their opponents to court at all.'" *Amchem Prods., Inc. v. Windsor*, 512 U.S. 591, 617 (1997). Here, it is in class members' interests to have this case proceed on a class basis for several reasons, including that: the claims are the same for all class members, so it is more efficient to try them together; many class members may only have small amounts in damages, so they may not be incentivized to pursue a case individually; and many class members may still work for WFX (and/or in the trucking industry generally) and may be reluctant to bring claims for fear of retaliation. *See, e.g., Braver v. Northstar Alarm Svcs., Inc.*, 329 F.R.D. 320, 333 (W.D. Okla. 2018) ("The 'class action device is frequently superior where proceeding individually would be difficult for class members with small claims.'"); *Overka v. American Airlines, Inc.*, 265 F.R.D. 14, 24 (D. Mass. 2010) (class action superior where plaintiffs argued that "fear of employer retaliation may have a chilling effect on employees bringing claims on an individual basis").

Numerous courts have granted class certification in cases brought on behalf of truck drivers under the Truth-in-Leasing regulations. *See, e.g.*, *Yata v. BDJ Trucking Co.*, 2020 WL 1062332 (N.D. Ill. Mar. 5, 2020); *Fox v. TransAm Leasing, Inc.*, 2014 WL 2604035 (D. Kan. Jun. 11, 2014); *Davis v. Colonial Freight Systems, Inc.*, 2018 WL 11225871 (E.D. Tenn. Mar. 2, 2018); *Foster v. CEVA Freight, LLC*, 272 F.R.D. 171 (W.D.N.C. 2011); *Owner-Operator Independent Drivers Ass'n, Inc. v. Allied Van Lines,*

*Inc.*, 231 F.R.D. 280 (N.D. Ill. 2005); *Owner-Operator Independent Drivers Ass'n, Inc. v. C.R. England, Inc.*, 2005 WL 2098919 (D. Utah Aug. 29, 2005); *Sheinhartz v. Saturn Transp. System, Inc.*, 2002 WL 575636 (D. Minn. Mar. 26, 2002); *Owner-Operator Independent Drivers Ass'n, Inc. v. Arctic Express, Inc.*, 2001 WL 34366624 (S.D. Ohio Sept. 4, 2001).

Because the settlement class satisfies all elements of Rule 23 for class certification, the Court should certify the class for settlement purposes.

**C.    The proposed settlement is fair, reasonable, and adequate and should be approved.**

The Tenth Circuit has identified four factors to determine whether a settlement is fair, reasonable, and adequate: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)); *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).  As demonstrated below, the settlement satisfies each of the criteria and thus warrants this Court's approval.

**1.    The proposed settlement is the product of extensive arm's-length negotiations between experienced counsel and assisted by an experienced mediator.**

Where, as here, a settlement results from "arm's length negotiations between experienced counsel after significant discovery [has] occurred, the Court may presume

the settlement to be fair, adequate, and reasonable." *Lucas*, 234 F.R.D. at 693; *see also* MANUAL FOR COMPLEX LITIG. (THIRD) § 30.42, at 238. This action has been pending for almost a year and half. During this time, the parties engaged in motion practice and then undertook a length negotiation/mediation process that involved identification and exchange of documents and data, legal and factual arguments, and extensive back-and-forth negotiation, assisted by an experienced mediator. Schwab Decl. ¶ 18. The negotiation process was exhaustive and hard-fought.

Courts in this Circuit have found settlements fairly and honestly negotiated where "[t]he completeness and intensity of the mediation process, coupled with the quality and reputations of the mediator, demonstrate a commitment by the [p]arties to a reasoned process for conflict resolution that took into account the strengths and weaknesses of their respective cases and the inherent vagaries of litigation." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 285 (D. Colo. 1997); *see also Horton v. Molina Healthcare, Inc.*, 2019 WL 2207676, at *1 (N.D. Okla. May 22, 2019) (finding a proposed class action settlement agreement fair and reasonable because, *inter alia*, it was "negotiated in good faith at arms' length between experienced attorneys familiar with the legal and factual issues of this case aided by an experienced and neutral third-party mediator"); *Ashley v. Reg'l Transp. Dist.*, 2008 WL 384579, at *5-*6 (D. Colo. Feb. 11, 2008) (settlement fairly and honestly negotiated where the parties engaged in formal settlement mediation conference and negotiations over four months); *see also Marcus v. Kan. Dept. of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ("When a settlement

is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable.").

This settlement is a product of serious, informed, and non-collusive negotiations among experienced counsel and the mediator and warrants approval.

> **2.**   **Serious questions of law and fact exist, and the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.**

Numerous serious questions of law and fact exist in this action, all of which are the subject of considerable risk if this case were to continue to be litigated.[7]  Schwab Decl. ¶ 20.  Some of the risks specific to this case include:  (1) that WFX may prevail on the merits of its motion to dismiss based on the notice provision in the contract, *see* Ct. Ord. on Mot. to Dismiss, at 5 (ECF Doc. No. 31) ("Though upon initial review the Court is sympathetic to Defendant's arguments, the Court finds it premature to address this argument prior to the mandatory mediation."); (2) the potential that the class will not be certified or will be only partially certified; and (3) risks relating to the ascertainment and quantification of damages for Plaintiff's claims.  Schwab Decl. ¶ 21; *see Owner-Operator Independent Drivers Ass'n, Inc. v. Landstar System, Inc.*, 622 F.3d 1307, 1325 (11th Cir.

---

[7]      *See also Wilkerson*, 171 F.R.D. at 285 (the value of an immediate recovery, the "monetary worth of the settlement," "is to be weighed not against the net worth of the defendant, but against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993))).

2010) (plaintiffs "must prove actual damages" to prevail on claim under Truth-in-Leasing regulations).

These are serious questions of law and fact that create great uncertainty in Class Members' ability to recover anything. Schwab Decl. ¶ 22. "The presence of such doubt tips the balance in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008).

Moreover, the complexity, uncertainty, additional expense, and likely duration of further litigation also favor approval of the settlement. *See In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 681 (D. Kan. 2009) (granting preliminary approval because, *inter alia*, "[t]he costs of continued litigation are high, and it is possible that plaintiffs could receive little or no pecuniary relief"); *Ashley*, 2008 WL 384579, at *7. "The class will be well compensated, relatively speaking, and is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." *McNeely*, 2008 WL 4816510, at *13.

This settlement represents not only a meaningful, immediate recovery for the Class, but also one without any risk or additional expenses of further litigation. Schwab Decl. ¶ 23. This benefit must be considered to the risk that the Class may recover nothing after certification proceedings, summary adjudication, appeals, contested trial, and most likely, further appeals, many years into the future, or that litigation would

deplete funds available to satisfy a judgment.  *Id.*, ¶ 24.  These factors thus support approval of the proposed settlement.

**3.      The parties agree that the settlement is fair and reasonable, further supporting preliminary approval.**

"Counsel['s] judgment as to the fairness of the agreement is entitled to considerable weight." *Childs v. Unified Life Ins. Co.*, 2011 WL 6016486, at *14 (N.D. Okla. Dec. 2, 2011) (quoting *Lucas*, 234 F.R.D. at 695 and *Marcus*, 209 F. Supp. 2d at 1183)). "In addition to considering the judgment of the parties with respect to the proposed settlement, the Court should also 'defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Johnson v. Tulsa*, 2003 U.S. WL 24015151, at *11 (N.D. Okla. May 12, 2003).

Here, Class Counsel and WFX's counsel – law firms with great experience in complex class litigation, particularly in truck driver cases – have agreed to settle this Action after serious arms-length negotiation, extensive exchange of discovery, and many months of discussions. Schwab Decl. ¶ 25. Class Counsel believes that the settlement amount is fair and reasonable in light of their extensive investigation, motion practice, the risks of continued litigation, and their overall experience.  *Id.*, ¶ 26.  Plaintiff and Class Counsel further recognize the great expense and length of proceedings necessary to continue this litigation against WFX through formal discovery, certification, summary judgment, trial, and inevitable appeals.  *Id.*

Based on Class Counsel's estimates, the Gross Settlement Amount of $800,000.00 represents a significant portion of the total calculated exposure at trial, especially in light

of the risks discussed *supra*. *Id*. There are many ways to calculate economic damages in these types of cases, and all of them would likely have been the subject of substantial and costly economic expert discovery. *Id*. Class Counsel estimates that WFX's maximum likely potential exposure for the claims asserted in the Complaint, on behalf of the entire putative class, is approximately $6,000,000.00. This assumes, of course, class certification and full success on the merits as to all of Plaintiff's legal theories. The proposed settlement of $800,000.00 is a reasonable percentage of that "best case scenario." Schwab Decl. ¶¶ 29.

Given the risks, delays, and uncertainty inherent in continued litigation, Plaintiff and Class Counsel believe that the settlement is fair and reasonable to avoid the cost and uncertainty of continuing litigation. *Id*., ¶ 30.

### 4. The notice process was fair, reasonable, and adequate.

The notice process was fair, reasonable, and adequate, as notice was sent by email, first-class mail, and/or text message, with many class members receiving notice by multiple methods, and with a reminder notice. Class members were also able to view the settlement terms on the settlement website, and they were able to submit claim forms electronically or by mail, fax, or email. This notice and method for submission of claim forms was unquestionably reasonable and the best practicable, particularly for a population of truck drivers who are often away from home but usually have frequent access to email. Schwab Decl. ¶ 10.

The notice reached more than 99.8% of all class members by first-class mail, email and/or text message, which is well within the undeliverable rate that courts have deemed acceptable. *See, e.g., Ebner v. Merchants & Med. Credit Corp.*, No. CV 14-06882, 2017 WL 1079966, at *4 (E.D. Pa. Mar. 22, 2017) (notice satisfied Rule 23 where there was "a 91.8 percent penetration rate"); *Bowman v. Art Van Furniture, Inc.*, No. 17-11630, 2018 WL 6445389, at *3 (E.D. Mich. Dec. 10, 2018) (same, where "[t]he Notice reached over 90% of the class"); *see also Brown v. Colegio de Abogados de Puerto Rico*, 2011 WL 721910, at *2 (D.P.R. Feb. 28, 2011) ("[T]he fact that around 9.5% of the Class Action Notices have been returned as undeliverable is not unexpected and does not warrant extending the opt-out deadline. In fact, larger percentages of undeliverable notices have resulted in notice procedures being approved."). Moreover, many of those individuals may have received notice through another source, such as visiting the settlement website directly.

The substantial claim rate further confirms the reasonableness of the notice. Approximately 1,174 class members out of 2,186 have claimed, representing over half of the class. This is a substantial claim rate and further supports approval of the settlement. *See, e.g.*, *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *3 (S.D. Ohio Nov. 25, 2019) ("[T]he opt-in/claims rate in this case is above average at over one third of the class joining the case or filing claims."); *Hillson v. Kelly Servs. Inc.*, No. 2:15-CV-10803, 2017 WL 3446596, at *2 (E.D. Mich. Aug. 11, 2017) ("Over 50,000 people (about 23% of the class) made claims, which appears to be a high claim rate.") (citing *Gascho v. Glob. Fitness Holdings, LLC*, 822

F.3d 269, 289 (6th Cir. 2016) (noting that expert who had administered 3,000 settlements had testified that "response rates in class actions generally range from 1 to 12 percent, with a median response rate of 5 to 8 percent")).

**5.**     **The settlement allocation formula is fair, reasonable, and adequate.**

Plaintiffs' proposed allocation formula is fair, reasonable, and adequate in that it takes into account each individual's potential damages from the case and allocates the settlement monies accordingly. Courts routinely hold that such formulas are fair, reasonable, and adequate. Indeed, a distribution formula that reimburses class members based on the type and extent of their injuries is presumptively reasonable. *See, e.g., Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) ("Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable") (citations omitted); *Walsh v. Popular, Inc.*, 839 F. Supp. 2d 476, 482 (D.P.R. 2012) (approving methodology for calculating shares from class settlement based on "each class member's losses relative to those of the class as a whole"); *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 110 (D. Mass. 2010) (holding that plan of allocation was reasonable because it was based on class members' losses); *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries"); *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) (allocation plan that "reimburses class members based on the type and extent of their injuries is generally reasonable").

Significantly, the settlement is non-reversionary, so all of the monies will be paid out to claiming class members.

As discussed above, this settlement is providing significant monetary relief to a large number of individuals. Moreover, the recovery for class members is tied to their potential damages—class members are receiving their shares based on the weeks they drove during the applicable period, which fairly approximates their potential damages under the Truth-in-Leasing regulations, which are largely tied to weekly deductions from their earnings.

Notably, moreover, the release of claims is narrow, limited only to claims under the Truth-in-Leasing regulations; it does not encompass all claims that class members might have against WFX.

**D.      The one objection does not warrant non-approval of the settlement.**

One *pro se* objection has been filed. In the objection, class member Lemont Lighty[8] makes three points: (1) that he expected to own his vehicle but was instead forced out before he completed his contract "due to unfair business practices" by WFX; (2) that WFX withheld compensation from him for more than fifteen days upon delivery and receipt of bills; and (3) WFX incorrectly calculated amounts owed to him based on miles driven. Lighty Objection (ECF Doc. No. 48).

---

[8]      Of note, according to WFX, this particular individual has a history of filing non-meritorious lawsuits against WFX. To the extent the Court would like further information about Mr. Lighty's lawsuit history, WFX has represented it will be happy to provide it.

For several reasons, this objection does not warrant non-approval of the settlement. First, the issues about which Lighty complains appear to be individual to him and do not indicate that the class wide settlement is somehow unfair or inadequate. Second, while Lighty may have claims against WFX relating to these issues, they do not appear to be the same claims that were raised in this lawsuit. Third, it is quite possible that Lighty is precluded from pursuing claims relating to purportedly incorrect compensation under the contract. Defendant argued in its motion to dismiss that the contract contained a provision requiring drivers to notify WFX of any objection to any chargeback item, which precluded Plaintiff from pursuing claims relating to improper deductions from pay. *See* Def.'s Mot. to Dismiss (ECF Doc. No. 22). The Court noted in ordering the parties to mediation that it was "sympathetic to Defendant's arguments" on this issue. Ct. Ord. on Mot. to Dismiss, at 5 (ECF Doc. No. 31). Lighty's arguments may similarly be subject to this provision of the contract. Finally, Lighty could have excluded himself from the settlement in order to pursue his individual grievances, but these issues are not a basis for denying recovery to over 1,000 other claiming class members.

Significantly, only one objection was received out of a class of over 2,000 individuals, which further weighs in favor of approval. *See, e.g., In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, No. 3:10-CV-30163-MAP, 2014 WL 6968424, at *4 (D. Mass. Dec. 9, 2014) (overruling objections from eleven out of 67,027 class members, "which represent the personal views of a *de minimis* number of Settlement Class Members"); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144 (E.D. Pa. 2000) ("[T]he reaction of the class to the proposed settlement was overwhelmingly positive.

Out of over 5,250 persons who received notice of the settlement, . . . there was only one objector. His objection related to his desire for a higher award because of severe hardship allegedly experienced that he attributed to defendant."; settlement approved).

## II.     THE PROPOSED SERVICE AWARD IS FAIR AND REASONABLE.

Plaintiff incorporates by reference Plaintiff's Petition for Attorneys' Fees and Expenses and for a Service Award for Plaintiff Kelvin Jackson (ECF Doc. No. 46) and requests that the Court approve the requested service award of $15,000 to Plaintiff Kelvin Jackson as fair and reasonable. In addition to the arguments set forth therein, Plaintiff further notes that the notice issued to class members informed them that Plaintiff would be seeking this service award, and no class member objected to the award. Schwab Decl. ¶ 14.

The proposed service award to Plaintiff Jackson is fair and reasonable, given that it was the named plaintiff who not only initiated this lawsuit on behalf of similarly situated individuals, but who obtained this recovery. Plaintiff Jackson was vital to the prosecution of this matter.

Accordingly, and for the reasons set forth in Plaintiff's Petition for Attorneys' Fees and Expenses and for a Service Award for Plaintiff Kelvin Jackson (ECF Doc. No. 46), Plaintiffs respectfully request that the Court approve the requested service award.

## III.     THE REQUESTED AWARDS FOR ATTORNEYS' FEES AND COSTS ARE FAIR AND REASONABLE, AND SUPPORTED BY APPLICABLE PRECEDENT.

Plaintiffs have submitted a lengthy petition seeking an award of attorneys' fees of $266,667 and expenses of $34,628.35, including the costs of settlement administration.

*See* Plaintiff's Petition for Attorneys' Fees and Expenses and for a Service Award for Plaintiff Kelvin Jackson (ECF Doc. No. 46). Plaintiffs incorporate that petition by reference. Additionally, since that filing on August 18, 2023, Plaintiffs' counsel have expended approximately nine additional hours. Schwab Decl. ¶ 15. Plaintiffs' counsel expect that they will spend significant additional time in settlement administration as well. For example, Plaintiffs' counsel expect to: continue to communicate with the Settlement Administrator relating to the status of claims and payment; resolve potential issues about additional claims; perform settlement calculations; and communicate with class members, etc. This work is expected to take approximately eleven additional hours, if not more. Schwab Decl. ¶ 16.

Additionally, the notice to class members informed them that Plaintiff's counsel would be seeking attorneys' fees in an amount not to exceed $266,667 and reimbursement of litigation costs not to exceed $50,000, and no class member has objected to these amounts. Schwab Decl. ¶ 17.

Accordingly, and for the reasons set forth in Plaintiff's Petition for Attorneys' Fees and Expenses and for a Service Award for Plaintiff Kelvin Jackson (ECF Doc. No. 46), Plaintiffs respectfully request that the Court approve Plaintiffs' request for attorneys' fees and costs.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court grant final approval of the settlement. Specifically, Plaintiffs request that the Court issue the Final Settlement Approval Order attached to this motion as Exhibit 1.

Respectfully submitted,

KELVIN JACKSON, individually
and on behalf of all others similarly situated,

  _/s/ Hillary Schwab_____
Hillary Schwab, Esq., admitted *pro hac vice* and
subsequently admitted to practice in the District
Court for the Western District of Oklahoma,
Feb. 7, 2022
Rachel Smit, Esq., admitted *pro hac vice*
Brant Casavant, Esq., admitted *pro hac vice*
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel:  (617) 607-3260
Fax:  (617) 488-2261
hillary@fairworklaw.com
rachel@fairworklaw.com
brant@fairworklaw.com

Jeff A. Taylor
State Bar No. 17210
The Offices at Deep Fork Creek
5613 N. Classen Blvd
Oklahoma City, OK  73118
Telephone:    (405) 286-1600
Telecopy:      (405) 842-6132

*Counsel for Plaintiff*

Dated:  September 7, 2023

## CERTIFICATE OF SERVICE

I certify that on September 7, 2023, I electronically transmitted this document to the Clerk of the United States District Court for the Western District of Oklahoma using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronical Filing to the following ECF registrants:

Christopher M. Scaperlanda, Esq.
*Counsel for Defendant*

I further certify that on September 7, 2023, I served this document and all attachments by first-class mail on the following individual:

Lemont Lighty
1937 W Palmetto Street
STE 152
Florence, SC 29501

*/s/ Hillary Schwab*
Hillary Schwab